**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

MICHAEL SANDERS,             )
                                 )
        Petitioner,        )
                                 )
        v.                 )     No. 18-CV-07121
                                 )
SHERWIN MILES,           )     Judge John J. Tharp, Jr.
                                 )
        Respondent.      )

## <u>MEMORANDUM OPINION AND ORDER</u>

Before the Court are Michael Sanders's two petitions for a writ of habeas corpus per 22 U.S.C. § 2254. Mr. Sanders is currently serving a life sentence as a result of two convictions for first-degree murder under accountability for the deaths of Keary Gagnier and Mercedes Ares. Reply to Resp't's Answer to Pets. for Writs of Habeas Corpus 1, ECF No. 27. The two petitions, which are consolidated for purposes of this opinion, each state three grounds for relief. For the reasons detailed below, both of the petitions are denied.

## BACKGROUND

With the notable exception of whether Mr. Sanders was present, the key details surrounding the gruesome deaths of Ms. Gagnier and Ms. Ares are uncontested. Ronald Hinton, a longtime friend of the petitioner, confessed to breaking into Ms. Gagnier's apartment in August 1998, raping her, murdering her by strangulation, and burglarizing her home. Answer to Pets. for Writs of Habeas Corpus 1, ECF No. 20. Police struggled to identify any suspects for the crime largely because Mr. Hinton did not know Ms. Gagnier; he had chosen her apartment because a backdoor had been left open and he needed money to purchase drugs and alcohol. *Id.* at 2. Six months later, Ms. Ares, another woman unknown to Mr. Hinton, was murdered in her apartment in a very similar fashion. *Id.* at 3-4.

In the week following Ms. Ares's murder, her stolen ATM card was used several times. *Id.* at 2. Chicago Police obtained video and photographic surveillance of two men using the card to make withdrawals. *Id.* After publishing the videos and photographs in the media, Mr. Hinton's daughter's mother, as well as his daughter's teacher, contacted the police to inform them that Mr. Hinton and Mr. Sanders were the two men pictured in the surveillance footage. *Id.* The two suspects were arrested together shortly thereafter and taken in for questioning, with Mr. Sanders wearing the same black jacket at the time of arrest that he was pictured wearing in the footage. *Id.* at 4. During his interrogation, Mr. Hinton admitted that he had raped and strangled both victims; DNA evidence taken from both women later corroborated his confession. *Id.* at 2. Mr. Hinton subsequently pleaded guilty to these murders, as well as to a third, and is currently serving three life sentences. *Id.* He has never wavered in his admission of guilt.

The chief point of disagreement throughout the entirety of these cases has been the role that the petitioner played in the two break-ins. After his arrest and a lengthy interrogation spanning more than 30 hours, Mr. Sanders confessed, in an oral statement transcribed by a court reporter, to helping Mr. Hinton break into both apartments and to searching for valuables while the rapes and murders were taking place. *Id.* Mr. Hinton's initial written confession also indicated that Mr. Sanders was present for both incidents. There was no physical evidence linking Mr. Sanders to either crime scene.

At the state court trial for Ms. Gagnier's murder, Mr. Hinton testified against the petitioner and, consistent with his written confession, indicated that Mr. Sanders was a participant in the burglary and was present at the apartment at the time of the rape and murder. *Id.* The only facts relating to Ms. Ares's murder, which was referred to during trial as an "unrelated incident," that were allowed to be presented were the details relating to Mr. Hinton and Mr. Sanders's arrest

following use of the stolen ATM card. The jury convicted Mr. Sanders of first-degree murder in the Gagnier case and he was sentenced to life in prison. *Id.* at 3.

At a suppression hearing held in the proceedings relating to Ms. Ares's murder, the trial court declined to quash Mr. Sanders's arrest for lack of probable cause and declined to suppress his confession, which Mr. Sanders alleged had been coerced through physical abuse. *Id.* at 7. The petitioner later unsuccessfully moved to reopen the suppression hearing so that (among other reasons) he could introduce evidence of misconduct committed in other cases by the interrogating officers. *Id.* at 6. At the state court trial for Ms. Ares's murder, a jury convicted Mr. Sanders of first-degree murder and he was sentenced to 60 years confinement. *Id.* at 4. Mr. Sanders appealed both convictions unsuccessfully and the Illinois Supreme Court denied both of his subsequent petitions for leave to appeal. *Id.* at 3-5.

Mr. Sanders also petitioned for post-conviction relief in both cases. The trial court conducted a consolidated evidentiary hearing. Although both of Mr. Sanders's post-conviction petitions contained a variety of allegations, all claims were dismissed before the hearing save for his two claims of actual innocence. *Id.* at 6. The petitioner largely based his actual innocence claims on Mr. Hinton's recantation of his confession and trial testimony implicating Sanders. *Id.* at 6. Mr. Sanders submitted an affidavit from Hinton stating that he had falsely testified at trial against his friend because his defense attorney had told him that his plea agreement could be revoked if he did not implicate Mr. Sanders. In truth, Mr. Hinton claimed, Mr. Sanders was not present at either crime and was entirely innocent of the murder charges.

At the hearing, Mr. Hinton testified that he had indeed lied on the stand during the trial but provided a different reason for his deception and claimed that it was an act of vengeance against Mr. Sanders, who had broken his trust by revealing details of the crimes to others. *Id.* at 22. Mr.

Hinton admitted that his previous explanation in his affidavit for his false trial testimony was a fabrication, as he had neither an attorney nor a plea agreement. *Id.* His testimony at the hearing was, however, consistent with his affidavit in that he claimed that Mr. Sanders was not at either apartment. *Id.* at 21. Both Mr. Sanders and Mr. Hinton also testified that their confessions had been coerced. *Id.* The court also heard testimony from Dana Stevens, a minister who recounted that Mr. Hinton had told him around the time of his arrest that Mr. Sanders was innocent. Reply to Resp't's Answer to Pets. for Writs of Habeas Corpus 6. At the conclusion of the hearing, the court declined to find Hinton's recantation credible and rejected the petitioner's claims that his written confessions had been coerced. Answer to Pets. for Writs of Habeas Corpus 22.

Before the Court now are Mr. Sanders's petitions for a writ of habeas corpus as to each of his convictions. With respect to the Gagnier murder conviction, the petitioner brings three claims: (1) "the cumulative effe[c]t of highly prejudicial non-probative other crimes evidence"; (2) "numerous instances of prosecutorial misconduct"; and (3) "newly discovered evidence of innocence" based on Mr. Hinton's affidavit. Pet. for Writ of Habeas Corpus 5-6, ECF No. 1 ("Gagnier Pet."). Regarding the Ares murder conviction, Mr. Sanders claims: (1) "[t]he appellate court erred in affirming the trial court's denial of defendant's motion to quash his arrest and suppress evidence"; (2) "[t]he appellate court erred in affirming the trial[] court's exclusion of evidence of an investigator's bad [a]cts"; and (3) "newly discovered evidence of innocence" based on Mr. Hinton's affidavit. Pet. for Writ of Habeas Corpus 5-6, ECF No. 8 ("Ares Pet.").

## DISCUSSION

Under 28 U.S.C. § 2254(d)(1)-(2), a federal court may grant a writ of habeas corpus to a petitioner incarcerated due to a state court judgment only under certain circumstances. The decision must have been either "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "based on

an unreasonable determination of the facts in light of the evidence presented." 28 U.S.C. § 2254(d)(1)-(2). This standard is a deferential one, and habeas corpus petitioners face a difficult burden in showing that a state court judgment was unreasonable. For the reasons detailed below, the petitioner has failed to meet that burden.

## I. Keary Gagnier Conviction

The petitioner argues that he is entitled to habeas relief in the Gagnier case because of the other crimes evidence introduced at trial, multiple instances of prosecutorial misconduct, and newly discovered evidence as to his actual innocence. The Court addresses each of these claims in turn.

### A. Other Crimes Evidence

The petitioner first claims that "the cumulative effe[c]t of highly prejudicial non-probative other crimes evidence denied [him] a fair trial. Under the 6th and 14th Amendment." Gagnier Pet. 5. Because that is the full extent of the claim in the petition, the government argues that Mr. Sanders's claim should be dismissed for factual insufficiency per Habeas Rule 2(c). Because the Court can, by assuming the claim raises the same issues brought forth in the petitioner's state court appeals, adequately assess the claim's merits, it declines to dismiss the other crimes evidence claim based on Rule 2(c).[1]

In his state court direct appeal, Mr. Sanders argued that his conviction was tainted by the inclusion of three forms of other crimes evidence: (1) the investigation of his use of a stolen ATM card; (2) the circumstances of his arrest; and (3) his involvement in an "unrelated incident," which was never identified during the Gagnier trial as the murder of Ms. Ares. The state appellate court

---

[1] The petitioner also rightly points out that the government's coherent and topical response to the claim suggests that it is not factually insufficient.

noted that while Mr. Sanders's attorney initially objected to the government's pretrial motion in limine to allow these three forms of evidence, counsel subsequently withdrew his objection pursuant to an agreement that limited the scope and use of that evidence. Answer to Pets. for Writs of Habeas Corpus Ex. D at 6. Moreover, defense counsel did not object to the introduction of that evidence at trial. *Id.* The state appellate court ruled, therefore, that the issue had not been preserved for appeal and that any subsequent review of the inclusion of these three forms of evidence would be subject to the heightened standard of plain error. *Id.* at 7. The appellate court then concluded that no error of any kind had occurred, let alone a clear and obvious error of the type required to find plain error. *Id.* at 7-14.

Here, the government, in addition to its factual insufficiency arguments, asserts that Mr. Sanders's other crimes evidence claims are procedurally defaulted because the state appellate court denied the claims on independent and adequate state law grounds—in other words, the appellate court ruled not on the merits, but instead found that the claims had been forfeited by the defense failing to object at trial. The Seventh Circuit has explicitly affirmed that line of reasoning. *See Kaczmarek v. Rednour*, 627 F.3d 586, 591 (7th Cir. 2010) ("Thus, when a state court refuses to reach the merits of a petitioner's federal claims because they were not raised in accord with the state's procedural rules (i.e., because the petitioner failed to contemporaneously object), that decision rests on independent and adequate state procedural grounds. A federal court on collateral review will not entertain a procedurally defaulted constitutional claim unless the petitioner can establish cause and prejudice for the default or that the failure to consider the claim would result in a fundamental miscarriage of justice.") (citations omitted).

The petitioner counters that the plain error analysis undertaken by the appellate court constitutes a dual ruling based in part on the merits. *See, e.g., Harris v. Reed*, 489 U.S. 255 (1989).

That argument, however, is unpersuasive. *Kaczmarek*, 627 F.3d at 592 ("We consistently have held that where a state court reviews a federal constitutional claim for plain error because of a state procedural bar . . . that limited review does not constitute a decision on the merits."). The petitioner's other crimes evidence claims are thus procedurally defaulted. Mr. Sanders argues in the alternative that even if that is the case, the procedural default can be overcome by his actual innocence claims. The Court addresses that argument *infra* in Part III.

### B. Prosecutorial Misconduct

The petitioner's second ground for contesting the Gagnier conviction is the "numerous instances of prosecutorial misconduct" in violation of "the 6th and 14th Amendment."[2] Gagnier Pet. 5. In his direct appeal, the petitioner argued three forms of prosecutorial misconduct: (1) improper commentary on Mr. Sanders's decision not to testify; (2) improper vouching for the credibility of Mr. Hinton as a witness; and (3) improper ridicule of the defense's case and accusations that Mr. Sanders's defense was fabricated. Answer to Pets. for Writs of Habeas Corpus Ex. A at 2.

With respect to the first form of purported prosecutorial misconduct, the principal argument offered by petitioner's defense attorney was that the only evidence against Sanders was the testimony of "three-time murderer and rapist" Ronald Hinton:

> The case is titled the People of the State of Illinois versus Michael Sanders. What the case is really about is Ronald Hinton, the convicted three-time murderer, versus Michael Sanders. This is the whole case. There is nothing else to bring in here. Ronald Hinton versus Michael Sanders, the word of a three-time murderer, the word of a rapist, against Michael Sanders, who sits there. That is what we are really talking about here, nothing else.

\* \* \* \* \*

---

[2] The factual basis for this claim is once again virtually nonexistent in the petition, but for the same reasons outlined *supra* in Part I(A), the Court declines to dismiss the claim on that ground.

7

Judge Schreier will instruct you that when a witness—that being Ronald Hinton, the three-time murderer and rapist—says he was involved in the commission of a crime with the Defendant, that being Michael Sanders, the testimony of that witness, Ronald Hinton, is subject to suspicion and should be considered by you with caution. It should be carefully examined in the light of the other evidence in the case. Folks, there is no other evidence in the case. It is Ronald Hinton versus Michael Sanders. That is what we have.

Rec. Ex. W, Trial Transcript, L-96-98.

In response, the prosecutor stated in her rebuttal:

There is about as much chance of Michael Sanders not being [in Gagnier's apartment] as there is about as much chance [sic] that he is not sitting in front of you today. Who does he think he is kidding? You should be insulted by what he wants you to believe, that he wasn't there. What evidence — and that is what you have to decide on — what evidence did you hear that he wasn't there? Who got up here, who got cross-examined, who said — who brought forth a document from this stand — this is where the evidence comes from, not over there. Who said he wasn't there? Nobody.

*Id.* at L-98-99. Sanders' counsel objected but the Court overruled the objection. The prosecutor then added:

Did anybody say he wasn't there? That is your evidence. Let's not get this all confused. They got to cross-exam the Detective. They got to cross-exam the Medical Examiner. They got to cross-exam Ronald Hinton. Who said he wasn't there? Who said he wasn't there? I might have missed that part. I must have slept through the part where they said Michael Sanders wasn't there, where all the witnesses said Michael Sanders wasn't there.

*Id.* at L-99. Lastly, she concluded:

Did anybody come in here and tell you that is not [Sanders's] signature on the bottom of that page? [The assistant state's attorney] told you he signed every single page . . . Who did you hear tell you he didn't sign it? . . . Did you hear anybody say, 'I fed [Sanders] the words, I made up the story, I told him all the facts.' You didn't hear that. Just because it is argued doesn't make it a fact. This is a fact. This is evidence.

*Id.* at L-100; L-104.

The state appellate court rejected the petitioner's argument that the prosecutor's rebuttal constituted impermissible commentary on his invocation of his right not to testify. Answer to Pets.

for Writs of Habeas Corpus Ex. D at 19. The petitioner contends that these statements were indirect commentary on his decision not to take the witness stand in violation of the Fifth Amendment because "the language used was manifestly intended to be or was of such a character that the jury would naturally and necessarily take it to be comment on the defendant's failure to testify." *United States v. Lyon*, 397 F.2d 505, 509 (7th Cir. 1968).

There are at least two problems with this argument. First, there is no clearly established precedent from the United States Supreme Court holding that indirect commentary on a defendant's failure to testify is unconstitutional. While the Supreme Court has held that "the Fifth Amendment . . . forbids either comment by the prosecution on the accused's silence or instructions by the court that such silence is evidence of guilt," *Griffin v. California,* 380 U.S. 609, 615 (1965), "[c]omments by the prosecutor on the state of the evidence that may indirectly refer to the defendant's silence . . . have not been the subject of direct Supreme Court guidance." *Freeman v. Lane*, 962 F.2d 1252, 1260 (7th Cir.. 1992); *see also, e.g., Clark v. Lashbrook*, 906 F.3d 660, 665 (7th Cir. 2018) ("*Griffin* was not implicated [where] . . . the prosecutor's comments . . . , at most, indirectly referenced [the defendant's] refusal to testify").[3] Because there is no "clearly established

---

[3] In his reply (at 19), Sanders asserts that "there is a clearly established case by the Supreme Court, in *Lysczyk v. United States*, 393 U.S. 846, 89 S. Ct. 131 (1968)" holding that indirect references to a defendant's failure to testify are constitutionally impermissible if the jury would naturally interpret them as comment on the defendant's failure to testify. *Lysczyk,* however, is not an opinion of the Supreme Court, but an order denying a petition for certiorari by one of the defendants in *Lyon*—the Seventh Circuit case noted above. It is axiomatic, of course, that the denial of a petition for certiorari has no precedential value. Justice Frankfurter explained more than 70 years ago: "[A]s all that a denial of a petition for a writ of certiorari means is that fewer than four members of the Court thought it should be granted, this Court has rigorously insisted that such a denial carries with it no implication whatever regarding the Court's views on the merits of a case which it has declined to review. The Court has said this again and again; again and again the admonition has to be repeated." *State of Md. v. Baltimore Radio Show*, 338 U.S. 912, 919 (1950).

law, as determined by the Supreme Court of the United States," precluding indirect comment on a defendant's failure to testify, Sanders' claim necessarily fails.

In any event, the state appellate court took the view that the prosecutor's argument was a permissible response to the defense argument that there was no evidence of Sanders' participation in the burglary of Ganger's apartment other than Hinton's testimony. That interpretation was not unreasonable. And indeed, the very case law cited by the petitioner recognizes that prosecution may point out that its evidence is unrefuted and that there is a dearth of evidence supporting the defense theories. In *Lyon*, for example, "[t]he challenged comments were made by the United States Attorney as part of a general review of the evidence. The commentary focused on the evidence as a whole and did not emphasize [the defendant's] failure to testify. [The defendant] was not the only witness who could have refuted the Government's testimony. . ." *Id.* Here, just as in *Lyon*, the prosecutor was pointing out, in response to a defense argument that described the case as hinging solely on the credibility of a "three-time murderer and rapist," that Hinton's testimony was reliable and consistent with the court-reported confession that Sanders' provided and signed.

That the prosecution was referring to the testimony of witnesses it presented rather than the absence of testimony of the defendant is also readily apparent from the references to the failure of the defense to elicit testimony on cross-examination that would support an argument that Sanders was not present. So too when the prosecutor argued that none of the witnesses to Sanders' confession recanted during cross-examination and admitted that "I made up the story, I told him all the facts." The prosecutor's questions about "who testified that Sanders wasn't there," though inartful, can reasonably be understood to mean that all of the testimony presented put Sanders at the scene and that none of the testimony presented supported the defense argument that Sanders was not present: **"I must have slept through the part where they said Michael Sanders wasn't there,**

*where all the witnesses said Michael Sanders wasn't there*." (emphasis added). That is a permissible argument to make—particularly in response to a defense argument that "the whole case" was premised on no evidence other than that of "three-time murderer and rapist" Ronald Hinton. Accordingly, the state appellate court was correct in its finding that the prosecutor's statements were constitutional and there is no basis for granting habeas relief to the petitioner on this claim.[4]

The petitioner next contests the prosecutor's allegedly improper vouching for the credibility of Mr. Hinton as a witness.[5] Mr. Sanders objects to the prosecutor's comments in closing argument that "for the first time in maybe a very, very long time, Ronald Hinton came into this courtroom, and he did the right thing. He told you what happened," as well as the subsequent comments in rebuttal that Hinton "finally took some responsibility" and "told the truth." Answer to Pets. for Writs of Habeas Corpus Ex. D at 19.

Although petitioner does not cite the cases,[6] the Supreme Court has routinely held that prosecutors cannot suggest that a jury should believe a witness based on information not

---

[4] It also bears noting that the trial court explicitly instructed the jury that it was not to consider the petitioner's decision not to testify.

[5] The respondent argues that this claim is defaulted because the petitioner did not establish its federal constitutional basis. The Court agrees with the respondent that the petitioner failed to fairly present his improper vouching argument as a violation of federal law and it is therefore procedurally defaulted. "For a claim to be 'fairly presented,' the petitioner must place before the state court both the controlling law and the operative facts in a manner such that 'the state court was sufficiently alerted to the federal constitutional nature of the issue to permit it to resolve the issue on that basis.'" *Hicks v. Hepp*, 871 F.3d 513, 530 (7th Cir. 2017). As the respondent notes, "although his direct appeal brief asserted that the federal constitution and the due process right to a fair trial could be violated by a prosecutor "commit[ting] improper acts during closing argument[ ]," petitioner did not cite any federal case in support of that argument in that brief or in his direct appeal PLA. The Court nevertheless also considers the claim on its merits but it fares no better.

[6] Petitioner's reply brief refers to *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) as authority for his claim of improper vouching but, while the closing argument at issue in that case contained many improper statements, improper vouching was not among them. And in any event,

introduced as evidence during trial. *See, e.g., Berger v. United States*, 295 U.S. 78, 88 (1935) (forbidding a prosecutor from implying that he knew a witness was lying because "improper suggestions, insinuations, and, especially, assertions of personal knowledge [by a prosecutor] are apt to carry much weight against the accused when they should properly carry none"). In particular, a prosecutor "vouching for the credibility of witnesses and expressing his personal opinion concerning the guilt of the accused pose two dangers: such comments can convey the impression that evidence not presented to the jury, but known to the prosecutor, supports the charges against the defendant and can thus jeopardize the defendant's right to be tried solely on the basis of the evidence presented to the jury; and the prosecutor's opinion carries with it the imprimatur of the Government and may induce the jury to trust the Government's judgment rather than its own view of the evidence." *United States v. Young*, 470 U.S. 1, 18-19 (1985). The Supreme Court has further explained that it is improper for prosecutors to relay their "personal impressio[ns]" to the jury regarding witnesses' credibility. *Id.* at 17. The Seventh Circuit has applied that precedent to preclude a prosecutor from vouching for the credibility of a detective by announcing that the detective would lose her job if she had lied on the stand—information that had not presented to the jury as evidence in the record. *Jordan v. Hepp*, 831 F.3d 837, 847-48 (7th Cir. 2016).

But here the prosecutor did nothing of the sort. Rather, the prosecutor's statements sought only to reinforce the state's theory of the case that Mr. Hinton's testimony was credible. In doing so, she made no reference to her own personal opinion regarding Mr. Hinton's credibility and did not refer to any information that had not been presented to the jury as evidence. Nothing about the statements was impermissible. Nonetheless, even if the statements had been improper, the

---

in *Darden* the Court held that the improper arguments—which were far more prejudicial than any argument offered in this case—did not deprive the defendant of a fair trial. *Id.*

petitioner has the burden of showing not just that they were made in error, but that they constituted plain error. *Young*, 470 U.S. at 14 ("[T]he dispositive issue under the holdings of this Court is not whether the prosecutor's remarks amounted to error, but whether they rose to the level of plain error.") (internal quotation marks omitted). The petitioner has made no such showing and as a result, the state appellate court's ruling that the comments were permissible was reasonable.

The third and final form of prosecutorial misconduct alleged by Mr. Sanders is the state's improper ridicule of his case and improper accusations that Mr. Sanders's defense was fabricated. As noted by the state appellate court, Mr. Sanders's counsel did not object to any of these comments when they were made in the courtroom. *Id.* at 20. These claims, just like the claims relating to the other crime evidence, are therefore procedurally defaulted for the reasons explained above.

### C. Actual Innocence

The third and final ground that Mr. Sanders puts forth with respect to the Gagnier case is a claim of actual innocence based on the "affidavit from codefendant Ronald Hinton." The government correctly argues that claims of actual innocence are non-cognizable in the Habeas context.[7] *See Herrera v. Collins*, 506 U.S. 390, 400 (1993) ("Claims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding.").[8]

The petitioner counters that the Seventh Circuit has recognized stand-alone claims of actual innocence as sufficient to authorize habeas relief, but neither of the cases he cites support that

---

[7] To the extent that the petitioner uses his actual innocence claim as a gateway to overcome default, that argument is addressed *infra* in Part III.

[8] The *Herrera* court reasoned that there might be an exception that allows actual innocence claims to proceed in capital cases, but such an exception would not apply to the current case. 506 U.S. at 405.

proposition. In the first, the petitioner appears to be referring to the dissent. *Bradford v. Brown*, 831 F.3d 902, 919 n.7 (7th Cir. 2016) (Hamilton, J., dissenting) ("[The petitioner] has also argued that this would be an appropriate case to decide whether the federal constitutional guarantee of due process of law should support an independent claim for relief based on only actual innocence, without any other constitutional violation . . . In my view, Bradford has shown that he is probably, in fact almost certainly, innocent."). The second case, which Mr. Sanders claims applies the previous holding in *Bradford*, does not even cite to *Bradford* and contains no discussion of actual innocence claims in federal habeas corpus review. *Snow v. Pfister*, 240 F. Supp. 3d 854 (N.D. Ill. 2016). In fact, the Seventh Circuit has explicitly and recently confirmed that an actual innocence claim is not a permissible ground for habeas relief. *Arnold v. Dittmann*, 901 F.3d 830, 837 (7th Cir. 2018) ("To date, an assertion of actual innocence based on evidence post-dating a conviction has not been held to present a viable claim of constitutional error.") (citation omitted).

A court in this district has, however, recently issued a certificate of appealability to allow the Seventh Circuit to address this very question. *Cal v. Dorethy*, 430 F. Supp. 3d 482, 490 (N.D. Ill. 2019). ("In support of his actual innocence claim (Claim 1), Petitioner has identified favorable facts suggesting that he may be innocent of the crimes for which he is currently incarcerated."). The petitioner in *Cal* was convicted of murder on the basis of the eyewitness testimony of one individual who later recanted. *Id.*

Even if the Seventh Circuit were to recognize claims of actual innocence as viable habeas claims, Mr. Sanders's actual innocence claim would fail on the merits. Although Mr. Hinton recanted, much like the witness in *Cal*, there is substantial reason to doubt the legitimacy of his recantation. He admitted during his testimony at the post-conviction evidentiary hearing that he had lied in his affidavit concerning the reasons for his previous false testimony. That contradiction

is of crucial importance, given that Mr. Hinton, who had already pleaded guilty and been sentenced by the time of Mr. Sanders's trial, had no self-serving incentive to testify against his friend. Even the petitioner characterizes Mr. Hinton as a "drug user" whose testimony is "inherently weak and very skeptical," although he would have the Court believe that those shortcomings only applied to Mr. Hinton's testimony at trial. Reply to Resp't's Answer to Pets. for Writs of Habeas Corpus 7; 17. It is not entirely clear to the Court why Mr. Hinton's trial testimony should be so heavily discounted but his testimony at the post-conviction hearing should be given so much credence; especially when considering that at the time of the post-conviction hearing, when he was already serving three life sentences, he had nothing to lose by testifying in support of his friend.

Moreover, unlike the petitioner in *Cal*, Mr. Sanders was convicted not solely on his friend's testimony, but also on the basis of his own confession, recorded by a court reporter, and his presence during the use of an ATM card stolen from one of the victims. The case against Mr. Sanders was stronger than that against Mr. Cal, and his post-conviction actual innocence claim is weaker. In addition, the trial court heard and carefully evaluated all of the evidence cited by Mr. Sanders at his post-conviction evidentiary hearing: Mr. Hinton's testimony and affidavit concerning his recantation, Mr. Hinton's and Mr. Sanders' testimony regarding their allegations of coerced confessions, and Mr. Stevens's testimony about his conversations with Mr. Hinton. The balance of the evidence illustrates that the state court committed no error in its denial of Mr. Sanders's motion for post-conviction relief.

## II. Mercedes Ares Conviction

The petitioner also argues that he is entitled to habeas relief in the Ares case because of the trial court's denial of the defendant's motion to quash his arrest and suppress evidence, the trial

court's exclusion of evidence of the investigator's prior bad acts, and newly discovered evidence as to his actual innocence. The Court addresses each of these claims in turn.

### A. Denial of Motion to Quash and Motion to Suppress

The petitioner first claims entitlement to relief from the Ares conviction because of "[t]he trial court's denial of defendant's motion to quash his arrest and suppress evidence." Ares Pet. 5. This claim is barred by *Stone v. Powell,* 428 U.S. 465 (1976), in which the Supreme Court held that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Id.* at 494. Here, the suppression hearing in state court constituted a "full and fair" opportunity for Mr. Sanders to litigate his Fourth Amendment claims. At the suppression hearing, the state court heard testimony from five witnesses, including the petitioner, viewed multiple videos, and heard oral argument. Mr. Sanders's right to present his case was thus clearly satisfied, rendering his claim barred.

In his reply brief, Mr. Sanders in part attempts to relitigate the suppression hearing by contesting the basis of the probable cause for his arrest. Reply to Resp't's Answer to Pets. for Writs of Habeas Corpus 21. More on point, he also maintains that he was not given a chance for a full and fair hearing because in the aftermath of the suppression hearing, his attorney unsuccessfully filed a motion to re-open the hearing due to newly discovered evidence. But the petitioner has provided no evidence to suggest that court's procedure in denying the motion to re-open was inadequate. He does not rebut the fact that before denying the motion, the trial court allowed both written and oral argument on the issue. Answer to Pets. for Writs of Habeas Corpus Ex. X at LLL-3. Instead, he first claims that the denial of the motion in and of itself is a sufficient showing of a lack of a full and fair hearing, but as the Seventh Circuit has noted, "'full and fair' guarantees the

right to present one's case, but it does not guarantee a correct result." *Cabrera v. Hinsley*, 324 F.3d 527, 532 (7th Cir. 2003). His conclusory assertion, with no meaningful justification, that the appellate court's affirmation of the denial was an "unreasonable determination of the facts" adds nothing to the mix. Reply to Resp't's Answer to Pets. for Writs of Habeas Corpus 23. In sum, the petitioner has failed to show that he received anything but a full and fair hearing on the issues raised by the motions to suppress, quash, and re-open. His claims are thus barred.

### B. Exclusion of Evidence of Investigator's Prior Bad Acts

The petitioner's second ground for relief in the Ares case is the "exclusion of evidence of an investigator's prior bad acts."[9] Ares Pet. 5. As part of the motion to re-open the suppression hearing, Mr. Sanders attempted to introduce evidence of a separate civil case, which alleged coercive interview tactics, that had been filed against one of his interrogating police officers. Mr. Sanders contended that the evidence would buttress his claim that his confession had been coerced. The trial court denied the motion and the state appellate court affirmed, reasoning that there was no evidence of physical abuse, such as physical injury, and that the coercion alleged in the civil case was too vague to be compared with Mr. Sanders's claims. Answer to Pets. for Writs of Habeas Corpus Ex. J at 13. The petitioner now asserts that the state court's exclusion of evidence relating to the civil case against the investigator constitutes grounds for habeas relief.

This claim is not cognizable in a federal habeas corpus proceeding because it is a challenge to a state law evidentiary ruling with no showing that a federal violation occurred. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("Today, we reemphasize that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting

---

[9] The government once again argues that this claim is procedurally defaulted because the petitioner did not fully establish the federal constitutional basis for his claim. Again, the Court agrees but will nevertheless also consider the merits—or lack thereof—of the claim.

habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."). To substantiate his claim, Mr. Sanders puts forth only the conclusory statement that the bad acts evidence "would have shown a pattern and practice of misconduct—in turn it could have been used to impeach [the investigators] on the circumstances of arrest and questioning of both Sanders and Hinton." Reply to Resp't's Answer to Pets. for Writs of Habeas Corpus 25. Mr. Sanders then concludes his argument by expressly stating that a "[r]e-litigation of his Motion to Suppress is necessary and thus he is entitled to relief." *Id.* Re-litigation of such state court issues is beyond the purview of federal habeas corpus review. Furthermore, the petitioner has provided no support to show that the trial court's exclusion of the prior bad acts evidence, or the appellate court's decision to affirm the exclusion, was unreasonable. The petitioner's claim with respect to the exclusion of the investigator's prior bad acts consequently must fail.

### C. Actual Innocence

The petitioner's actual innocence claim with respect to the Ares murder is identical to the actual innocence claim he put forth in the Gagnier murder. For the reasons set forth in Part I(C), *supra*, this claim must be denied.

## III. Actual Innocence as a Gateway

As a final argument in the alternative, the petitioner briefly argues in his reply that he "has presented viable evidence (Hinton & Stevens) *supra*, to show a gateway actual innocence claim to overcome any procedural default." Reply to Resp't's Answer to Pets. for Writs of Habeas Corpus 25. To successfully state an actual innocence gateway claim, "a petitioner . . . [must] present[] evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error. . ."

*Schlup v. Delo*, 513 U.S. 298, 316 (1995). Here, as detailed above, the petitioner has failed to meet this burden. The only evidence he cites to support his claim of actual innocence is the previously discussed affidavit of Ronald Hinton and the secondhand testimony of Dana Stevens, both of which the state trial court heard at the post-conviction hearing. These flawed pieces of evidence are hardly indicative of the type of "fundamental miscarriage of justice" required to overcome procedural default in habeas corpus proceedings. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). Mr. Sanders's actual innocence claims, therefore, cannot overcome the procedural defaults discussed above.

* * *

For the reasons stated above, Mr. Sanders's petitions for a writ of habeas corpus, ECF No. 1 and 8 are denied. Because this is a final decision ending all proceedings before this Court, the petitioner is only entitled to an appeal if he obtains a certificate of appealability by showing denial of a constitutional right. 28 U.S.C. § 2253(c)(1). The Supreme Court has explained that that standard is governed by whether a petitioner can demonstrate "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (internal citations omitted). The petitioner has made no such demonstration here and, accordingly, the Court declines to issue a certificate of appealability.

Date: July 31, 2020

John J. Tharp, Jr.
United States District Judge